# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERI BROWN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No.: 1:17-cv-00670 - LJO - JLT <br><br> FINDINGS AND RECOMMENDATIONS DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION <br><br> (Doc. 19) |

Charter Communications seeks to compel arbitration for this action initiated by Teri Brown. (Doc. 19) Charter argues arbitration should be compelled pursuant to the Federal Arbitration Act, while Plaintiff contends the arbitration agreement does not apply to Plaintiff.

The motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). (Doc. 20) The Court found the matter suitable for decision without oral arguments, and took the motion under submission pursuant to Local Rule 230(g). For the following reasons, the Court recommends Defendant's motion to compel arbitration be **DENIED**.

## I.     Background

Plaintiff alleges Charter Communications Inc., doing business as Spectrum, engaged in a "campaign of communicating with the Plaintiff via the use of an automated telephone dialing system and prerecorded messages throughout the past year by calling her cell phone number … numerous

1

times in attempts to market its service." (Doc. 1 at 3, ¶ 12) She asserts that "Defendant called from numerous phone numbers, including but not limited to (844) 207-1531, (855) 383-5891, and (203) 404-6762, which phone number belongs to Defendant." (*Id.* at 4, ¶ 16) According to Plaintiff, when she answered these calls "she was subjected to an unwanted and uninvited sales pitch from the Defendant." (*Id.*, ¶ 17) Further, Plaintiff asserts that on March 22, 2017, she "spoke with the Defendant and stated emphatically that she is not interested in this service." (*Id.*, ¶ 18)

She alleges that despite informing the company that she did not wish to receive phone calls, "Defendant has continued to call the Plaintiff's cellular telephone number without prior express consent." (Doc. 1 at 4, ¶ 19) Plaintiff asserts that the "calls either state that they are from Spectrum, from Charter Communications, or from Spectrum formerly known as BrightHouse." (*Id.*, ¶ 20) In addition, she reports:

> When the phone number (844) 207-1531 is called back, the caller is prompted to a pre-recorded message that states: 'Spectrum attempted to call you to inform you about new offers in your area. We will attempt to call you again in the near future. If you would like to have your number added to our do not call list press one.'

(*Id.* at 4-5, ¶ 21)

According to Plaintiff, "Defendant specifically used an automated telephone dialing system and prerecorded messages to call the Plaintiff on her cell phone at least five times from February 2017 to present." (Doc. 1 at 5, ¶ 22) She asserts, "Defendant specifically used an automated telephone dialing system and prerecorded messages to call the Plaintiff on her cell phone at least five times from February 2017 to present." (*Id.*, ¶ 23) Plaintiff alleges she never gave Defendants "prior, express permission to call her cell phone via the use of an automated telephone dialing system," and "never provided her cell phone number to Defendant or had any business, educational or personal relationship with the Defendant." (*Id.*, ¶¶ 24-25)

Plaintiff contends the "repeated calls caused …[her] to be harassed, stressed, frustrated and annoyed by refusing to cease its incessant calls despite [the] repeated pleas for the calls to stop." (Doc. 1 at 6, ¶ 31) She asserts that she "has suffered concrete and particularized injuries and harm, which include:

///

      a. Invasion of privacy;

      b. Intrusion upon and occupation of the capacity of Plaintiff's cellular telephone;

      c. Wasting Plaintiff's time;

      d. Risk of personal injury due to interruption and distraction when receiving unwanted telemarketing calls from Defendant;

      e. Depletion of Plaintiff's cellular telephone battery; and

      f. The cost of electricity to recharge Plaintiff's cellular telephone battery."

(*Id.* at 6-7, ¶ 32) Further, she contends Defendant has contacted other individuals, who "had not previously consented to receiving such calls within the four years prior to the filing of this Complaint," through the use of automated phone systems. (*Id.* at 7-9, ¶¶ 34-35)

      Based upon these facts, Plaintiff filed a complaint on behalf of herself and others similarly situated, asserting Defendant is liable for: (1) negligent violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*; and (2) knowing and/or willful violations of the Telephone Consumer Protection Act. (Doc. 1 at 11-13) On August 31, 2017, Defendant filed its answer to the complaint and asserted that "Plaintiff's claims are subject to the terms and conditions of [a] service agreement and subject to a valid and binding arbitration provision, wherein either party may—without the other's consent—elect mandatory, binding arbitration for any claim, dispute, or controversy between the parties." (Doc. 13 at 7)

      On October 23, 2017, Defendant filed its motion to compel arbitration, asserting "Plaintiff is party to a binding arbitration agreement that (1) is enforceable under the FAA, and (2) delegates all questions of arbitrability to the arbitrator." (Doc. 19 at 2) Plaintiff filed her opposition to the motion on November 8, 2017 (Doc. 22), to which Charter filed a reply on November 15, 2017 (Doc. 25).

## II.    Legal Standard

      The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

1   The Court's role in applying the FAA is "limited to determining whether a valid agreement to
2   arbitrate exists and, if so, whether the agreement encompasses the dispute as issue." *Lifescan, Inc. v.
3   Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). To determine whether an
4   arbitration agreement encompasses particular claims, the Court looks to the plain language of the
5   agreement, and "[i]n the absence of any express provision excluding a particular grievance from
6   arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can
7   prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960).
8   Because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not
9   a high one [and] a district court has little discretion to deny an arbitration motion." *Republic of
10  Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

11  A party opposing arbitration has the burden to demonstrate the claims at issue should not be
12  sent to arbitration. *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also
13  Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("the parties
14  challenging the enforceability of an arbitration agreement bear the burden of proving that the provision
15  is unenforceable"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in
16  favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25
17  (1983). As a result, arbitration should only be denied when "it may be said with positive assurance
18  that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."
19  *AT&T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).

20  **III.    Terms of the Arbitration Provision**

21  Plaintiff was a Bright House Network "subscriber from January 2012 to July 2013," during
22  which time she received "cable TV and broadband Internet access services at a residential address in
23  Bakersfield, California." (Doc. 19-3 at 2, Flores Decl. ¶4) To receive these services, customers such
24  as Plaintiff were required to "agree to a subscriber agreement known as the Agreement for Residential
25  Services," which sets forth the terms and conditions of services from Bright House. (*Id.*, ¶ 5; *see also
26  Doc. 19-4 at 4-17) The Agreement includes an arbitration provision, stating:

27  > (a) If you have a Dispute (as defined below) with BHN that cannot be resolved, you or
    > BHN may elect to arbitrate that Dispute in accordance with the terms of this Arbitration
28  > Provision rather than litigate the Dispute in court. Arbitration means you will have a fair
    > hearing before a neutral arbitrator instead of in a court by a judge or jury.

4

> (b) As used in this Provision, the term "Dispute" means any dispute, claim or controversy between you and BHN regarding any aspect of your relationship with BHN or the BHN Parties that has accrued or may thereafter accrue, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory.

(Doc. 19-4 at 13) In addition, the provision includes a "Right to Opt Out," which provides a customer may opt-out of the arbitration provision by providing written notice to Bright House within thirty days from the date of receiving the Agreement. (*Id.* at 14) The Agreement also includes a "special note regarding arbitration to California customers," which states: "If you are a BHN customer in California, BHN will not seek to enforce the arbitration provision above unless we have notified you otherwise." (*Id.*, emphasis omitted)

## IV. Discussion and Analysis

### A. Validity of the arbitration agreement

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002). Here, the Agreement provided that it was "subject to all applicable federal, state, or local laws and regulations, including any applicable franchise agreement, in effect in the relevant jurisdiction(s) in which [the customer] receive[s] . . . Services." (Doc. 19-4 at 16, ¶ 22) Because Plaintiff received services in California, the Court applies the state's laws to determine whether the agreement is valid.

California law provides that the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)). An arbitration agreement may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011); *see also* Cal. Code Civ. Proc. § 1281 (explaining an arbitration agreement may only be invalidated upon

the same "grounds as exist for the revocation of any contract").

Under California law, an arbitration agreement may be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281. For example, a contract "is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)). Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results." *Stirlen v. Supercuts*, Inc., 51 Cal.App.4th 1519, 1532 (1997) (citations omitted). Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree. *Davis*, 485 F.3d at 1072; *Stirlen,* 51 Cal.App.4th at 1532. Consequently, "[c]ourts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Cal.4th 83, 99 (2000)).

Plaintiff does not argue that the parties were not capable of consent, did not consent, or that there was not a lawful object to the contract. Further, Plaintiff does not argue there was insufficient cause or consideration for the Residential Services Agreement with Bright House Networks. Accordingly, the Court finds Plaintiff does not challenge the validity of the agreement.

**B.      Whether the arbitration agreement encompasses the disputes at issue**

Plaintiff argues the arbitration agreement may not be enforced because it does not encompass the disputes at issue. (*See generally* Doc. 22)  In general, the party resisting arbitration bears the burden of showing that the arbitration agreement does not encompass claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). As noted above, to determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement. Unless there is "any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf Navigation Co.*, 363 U.S. at 584-86.

1.      Arbitrability

As an initial matter, the parties disagree regarding whether the issue of arbitrability is encompassed in the arbitration provision, and delegated to the arbitrator. Charter argues that under the

Residential Services Agreement ("RSA"), "Plaintiff agreed that questions concerning the arbitrability of a particular dispute—including the existence, validity, enforceability, or scope of the Arbitration Provision—are to be resolved by the arbitrator." (Doc. 19 at 11-12) On the other hand, Plaintiff contends, "The RSA does not delegate questions of arbitrability to the arbitrator," and that "<u>nowhere</u> in the RSA is there any mention of who decides arbitrability, or of any delegation of that issue to an arbitrator." (Doc. 22 at 15)

The Supreme Court has determined the question of whether parties have submitted a particular dispute to arbitration— "the question of arbitrability" — "is undeniably an issue of judicial determination." *AT&T Technologies*, 475 U.S. at 649. The Court explained, "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.*, citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 491 (1972). If the agreement is silent or ambiguous, the Court must determine whether an issue is arbitrable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).

This Court previously explained that "[f]or 'a litigant seeking to prove that the parties intended for the arbitrator to decide questions of arbitrability,' the burden has been described as 'onerous.'" *Beard v. Santander Consumer USA, Inc.*, 2012 WL 1292576 (E.D. Cal. Apr. 16, 2012), quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir.2007); *see also Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (explaining the court applies "a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability"). For example, in *Momot*, the Court found there was "clear and unmistakable" evidence the parties agreed to submit the issue of arbitrability to the arbitrator where the agreement indicated an arbitrator had "authority to determine the validity or application of any of the provisions of the arbitration clause." *Id.*, 652 F.3d at 988 (internal quotations omitted).

Under the RSA, the customer is informed that disputes subject to arbitration include "any dispute, claim or controversy between you and BHN regarding any aspect of your relationship with BHN or the BHN Parties that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort . . . or any other legal or equitable theory." (Doc. 19 at 12, quoting Doc. 19-

4 at 13) Charter contends that "[s]uch a broad arbitration clause clearly and unmistakably demonstrates the parties' intent to delegate the power to decide all questions of arbitrability to the arbitrator." (*Id.*, citing *Trinity Christian Center of Santa Ana, Inc. v. Koper*, 2013 WL 3200578 at *3 (C.D. Cal. June 21, 2013); *LaCross v. Knight Transp. Inc.,* 2016 U.S. Dist. LEXIS 129676 at *6-8 (D. Az. Sept. 22, 2016)) However, it appears the arbitration provision before this Court must be distinguished from those considered in *LaCross* and *Trinity Christian Center*

In *LaCross*, the arbitration agreement provided that claims subject to arbitration include any "dispute arising out of or related to" the agreement entered into the parties. *Id.*, 2016 U.S. Dist. LEXIS 129676 at *6. In addition, the provision indicated "the dispute shall be referred to arbitration in accordance with the National Rules for Resolution of Commercial Disputes (including Mediation and Arbitration Rules) of the American Arbitration Association ('AAA')." *Id.* Because the Ninth Circuit "explicitly held that 'incorporation of the AAA rules [in an arbitration agreement] constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability,'" the district court found the referral to arbitration under the AAA's Rules mandated a finding that the issue of arbitrability was delegated to an arbitrator. *Id.* at *8-11, citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (noting the AAA Rules' provide "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement"). In contrast, here, there is no provision indicating that AAA Rules are incorporated to the arbitration agreement, or that that the dispute is referred to arbitration with the application of the AAA Rules.

In *Trinity Christian Center*, "the parties stipulated that certain threshold issues of arbitrability would be decided by [the] Court." *Id.*, 2013 WL 3200578 at *1. Under the terms of the arbitration provision: "The arbitrator must decide all disputes that may arise rise out of the employment context.... Included within the scope of this Agreement are all disputes, whether they be based in tort, contract, statute ... equitable law or otherwise...." *Id.* at *3 (internal quotation marks omitted). The court noted that the Ninth Circuit determined that "when an arbitration clause covered 'any grievance or controversy,' an arbitrator decides arbitrability of the dispute." *Id.,* citing *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co*., 832 F.2d 507, 510-11 (9th Cir.1987). Based in part upon this interpretation of *Brotherhood of Teamsters*, the court determined that because "the

8

arbitration agreement include[d] an extremely broad arbitration clause"—and the issue of arbitrability could be construed as "one that involves 'contract,' 'statute' and 'equitable law,'" —arbitrability was delegated to the arbitrator. *Id.*, 2013 WL 3200578 at *3.

Significantly, in *Brotherhood*, the issue before the court was whether there was a collective bargaining agreement containing an arbitration provision was "in effect at a particular time" or had been terminated. *Id.* The Ninth Circuit noted it was not being asked to determine "what the arbitration clause provides, or what its scope is," but rather "the proper meaning or interpretation of [a] termination clause." *Id.* Because the arbitration clause governed "any grievance or controversy affecting the mutual relations of the Employer and the Union," and the parties did not identify any "language purporting to exclude termination disputes from the scope of the arbitration clause, nor to any ambiguity or uncertainty in that clause," the Court found the clause encompassed the dispute at issue. *Id.* at 508, 511. In contrast, here, there is a dispute regarding the scope of the arbitration provision. Further, Plaintiff identifies a provision of the arbitration clause that indicates the claims of a California customer, and argues her claims are expressly excluded from arbitration.

Moreover, as the Ninth Circuit acknowledged in *Brotherhood*, "While an arbitration clause could be drafted in such a manner as to authorize an arbitrator to resolve disagreements over the scope of the clause (as well as the merits of the contractual disputes), courts do not ordinarily construe standard arbitration clauses, even the broader ones, as doing so." *Id.*, 832 F.2d at 509. The Court explained, "the courts reason that where there is a legitimate disagreement over the scope or coverage of the arbitration clause itself, it is unclear whether the parties have contracted for arbitration of the particular dispute and a court must decide that question." *Id.* Here, there is clearly a dispute over the scope of the arbitration provision, and the Court cannot find "clear and unmistakable" evidence that the arbitrator should decide gateway issues, such as the jurisdiction of the arbitrator, the scope of the agreement, validity, or arbitrability. *See Momot*, 652 F.3d at 987-88; *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 955 (N.D. Cal. 2015) ("an arbitration provision that explicitly refers arbitrability questions to an arbitrator is evidence that the parties clearly and unmistakably have referred the arbitrability question to the arbitrator"). Accordingly, the Court must decide the arbitrability of the dispute at issue. *See AT&T Technologies*, 475 U.S. at 649; *Kaplan*, 514 U.S. at 944-45.

### 2. Disputes in issue

#### a. *Parties entitled to seek arbitration*

The arbitration provision informs customers: "If you have a Dispute… *with BHN* that cannot be resolved, *you or BHN* may elect to arbitrate that Dispute in accordance of the terms of this Arbitration Provision…" (Doc. 19-4 at 13, emphasis added) As defined in the RSA, "'BHN' means the local Bight House Networks- affiliated cable operator that is providing the Services over its cable system, or any cable operator to whom BHN assigns this Agreement." (Doc. 19-4 at 14) In contrast, "BHN Parties" are defined as "BHN and its corporate parents, affiliates and subsidiaries and their respective directors, officers, employees, and agents." (*Id.*)

From the face of the agreement, only disputes with BHN—not its "ultimate parent" company Charter Communications, Inc. (Doc. 19-5 at 2)—are encompassed within the arbitration agreement. Further, the provision clearly sets forth that only the customer and BHN, which is not named as a defendant, are entitled to seek arbitration for disputes over "any aspect of [the customer's] relationship with BHN or the BHN Parties." (Doc. 19-4 at 13) Thus, it is not clear from the face of the agreement that Charter is entitled to enforce the contract in general or the arbitration clause in particular. Nevertheless, for purposes of this motion, the Court will assume—as the parties do not dispute this— that this provision applies to Charter as it would to BHN.

#### b. *Notice to California customers*

Plaintiff argues the arbitration provision "expressly does not apply to the Plaintiff" in light of a clause related to California customers. (Doc. 22 at 6, emphasis omitted). Specifically, the arbitration provision in the RSA includes a "Special Note Regarding Arbitration for California Customers," providing:

> IF YOU ARE A BHN CUSTOMER IN CALIFORNIA, BHN WILL NOT SEEK TO ENFORCE THE ARBITRATION PROVISION ABOVE UNLESS WE HAVE NOTIFIED YOU OTHERWISE.

(Doc. 19-4 at 12) (emphasis in original). According to Plaintiff, "[this] carve-out for BHN's California customers mandates the denial of Charter's Motion to Compel." (Doc. 22 at 6) She asserts there can be no question that the Plaintiff is a BHN customer in California," and "the carve-out does not specify that it is limited to current customers of BHN." (*Id.* at 7, emphasis in original) Plaintiff

asserts she did not receive "any prior notice, as required by the RSA, which would allow Charter to now break BHN's promise not to enforce the Arbitration Agreement." (*Id.* at 8) Given the lack of notice, Plaintiff contends the arbitration agreement may not be enforced. (*Id.* at 8-11)

In response, Charter argues that Plaintiff was not entitled to notice that the arbitration agreement would be enforced, as she is "a former cable TV customer of [BHN] … who discontinued her services in 2013." (Doc. 25 at 8, quoting Doc. 22 at 5) According to Charter, "Because all parties agree that Plaintiff *formerly was* a BHN customer, but is not *now* a BHN customer, and Plaintiff does not dispute that the Arbitration Provision remains in force today, the use of the present tense term 'are' unambiguously establishes that Plaintiff does not fall within the scope of Section 14(f)." (Doc. 25 at 9) In support of this assertion, Charter refers the Court to its prior holding in *Hodson v. Bright House Networks, LLC.*, in which the Court determined the California carve-out did not apply to a former customer. *Id.*, 2013 WL 1091396 (E.D. Cal. Mar. 15, 2013)

Significantly, the issue before the Court in *Hodson* related to the notice for California customers differs from the matter now before the Court. In *Hodson*, the plaintiff received services only in the state of Florida. *Id.*, 2013 WL 1091396 at *1. Arguing he should not be compelled to arbitrate his claims, the plaintiff asserted the notice to California customers applied to him, because he was residing in California when he filed his lawsuit. *Id.* at *7. However, the Court found the "argument that [the plaintiff] is a 'California customer' fails given that he received service from Bright House in Florida, not California." *Id.* In contrast, here, the Court is now faced with the question of whether notice must be given to a former customer who received services *in California*.

Although the special notice provision does not distinguish between former and current customers, there is no evidence that a customer who entered the RSA agreement— and was informed that notice would be given —lost the right to receive notice upon termination of the RSA. The plain language of the special notice to California customers that BHN would "not seek to enforce the arbitration provision … unless we *have* notified you otherwise," which indicates notice would be

11

provided prior to the customer entering the agreement, or contemporaneously with it.[1] To hold otherwise would render the term completely illusory. *See Mohamed v. Uber Techs., Inc.,* 848 F.3d 1201, 1211 (9th Cir. 2016) (explaining a promise is illusory where it does not "put any limitation on the freedom of the alleged promisor"). However, Plaintiff did not receive notice that Charter would seek to enforce the arbitration agreement until after the lawsuit was filed (Doc. 19 at 11, n. 2), several years after Plaintiff stopped receiving services from Bright House Networks. Under these circumstances, the Court cannot find notice was provided as required by the special notice provision.

## V.     Findings and Recommendations

In light of the special notice to California customers, the Court finds Plaintiff carries her burden to the claims raised in her complaint are expressly excluded from arbitration. *See Randolph*, 531 U.S. at 92; *Warrior & Gulf Navigation Co.*, 363 U.S. at 584-86. Accordingly, the Court **RECOMMENDS** that Defendant's motion to compel arbitration be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the Objections shall be filed and served within 7 days of the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __December 14, 2017__      /s/ Jennifer L. Thurston
                                                                UNITED STATES MAGISTRATE JUDGE

---

[1] Notably, customers are also informed that they have thirty days to choose to opt out of the arbitration provision. (Doc. 19-4 at 13) Seemingly, notice would have to be given in order for California customers to make an informed decision regarding whether to opt out of arbitration.
    Using defendant's rationale, plaintiff's refusal to agree to arbitration would like by determined to be a timely opt-out after the demand for arbitration was made.

13