# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERI BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | Case No.: 1:17-cv-00670 - LJO - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STAY IN PART<br><br>(Doc. 31) |

Charter Communications seeks to stay this action initiated by Teri Brown, who asserts that Charter, doing business as Spectrum, engaged in a "campaign of communicating with the Plaintiff via the use of an automated telephone dialing system and prerecorded messages." (Doc. 1 at 3) Defendant seeks to stay the action pending a ruling by the D.C. Circuit Court, which is considering the definition of "automatic telephone dialing system" under the Telephone Consumer Protection Act. (Doc. 9) For the following reasons, Charter's motion for a stay is **GRANTED IN PART**.

## I.     Background

Plaintiff alleges Charter communicated with her "throughout the past year by calling her cell phone number … numerous times in attempts to market its service." (Doc. 1 at 3, ¶ 12) She asserts that "Defendant called from numerous phone numbers, including but not limited to (844) 207-1531, (855) 383-5891, and (203) 404-6762, which phone number belongs to Defendant." (*Id.* at 4, ¶ 16)

1

According to Plaintiff, when she answered these calls "she was subjected to an unwanted and uninvited sales pitch from the Defendant." (*Id.*, ¶ 17) Further, Plaintiff asserts that on March 22, 2017, she "spoke with the Defendant and stated emphatically that she is not interested in this service." (*Id.*, ¶ 18)

She alleges that despite informing the company that she did not wish to receive phone calls, "Defendant has continued to call the Plaintiff's cellular telephone number without prior express consent." (Doc. 1 at 4, ¶ 19) Plaintiff asserts that the "calls either state that they are from Spectrum, from Charter Communications, or from Spectrum formerly known as BrightHouse." (*Id.*, ¶ 20) In addition, she reports:

> When the phone number (844) 207-1531 is called back, the caller is prompted to a pre-recorded message that states: 'Spectrum attempted to call you to inform you about new offers in your area. We will attempt to call you again in the near future. If you would like to have your number added to our do not call list press one."

(*Id.* at 4-5, ¶ 21)

According to Plaintiff, "Defendant specifically used an automated telephone dialing system and prerecorded messages to call the Plaintiff on her cell phone at least five times from February 2017 to present." (Doc. 1 at 5, ¶ 22) She asserts, "Defendant specifically used an automated telephone dialing system and prerecorded messages to call the Plaintiff on her cell phone at least five times from February 2017 to present." (*Id.*, ¶ 23) Plaintiff alleges she never gave Defendants "prior, express permission to call her cell phone via the use of an automated telephone dialing system," and "never provided her cell phone number to Defendant or had any business, educational or personal relationship with the Defendant." (*Id.*, ¶¶ 24-25)

Plaintiff contends the "repeated calls caused …[her] to be harassed, stressed, frustrated and annoyed by refusing to cease its incessant calls despite [the] repeated pleas for the calls to stop." (Doc. 1 at 6, ¶ 31) She asserts that she "has suffered concrete and particularized injuries and harm, which include:

a. Invasion of privacy;

b. Intrusion upon and occupation of the capacity of Plaintiff's cellular telephone;

c. Wasting Plaintiff's time;

d. Risk of personal injury due to interruption and distraction when receiving unwanted telemarketing calls from Defendant;

    e. Depletion of Plaintiff's cellular telephone battery; and

    f. The cost of electricity to recharge Plaintiff's cellular telephone battery."

(*Id.* at 6-7, ¶ 32) Further, she contends Defendant has contacted other individuals, who "had not previously consented to receiving such calls within the four years prior to the filing of this Complaint," through the use of automated phone systems. (*Id.* at 7-9, ¶¶ 34-35)

  Based upon these facts, Plaintiff filed a complaint on behalf of herself and others similarly situated, asserting Defendant is liable for: (1) negligent violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*; and (2) knowing and/or willful violations of the Telephone Consumer Protection Act. (Doc. 1 at 11-13) On August 31, 2017, Defendant filed its answer to the complaint and asserted that "Plaintiff's claims are subject to the terms and conditions of [a] service agreement and subject to a valid and binding arbitration provision, wherein either party may—without the other's consent—elect mandatory, binding arbitration for any claim, dispute, or controversy between the parties." (Doc. 13 at 7)

  On December 19, 2017, Defendant filed the motion to stay now pending before the Court. (Doc. 31) Plaintiff filed her opposition to the motion on January 2, 2017 (Doc. 33), to which Charter filed a reply on January 9, 2018 (Doc. 34).

## II.  Legal Standard

  The Supreme Court explained the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). To evaluate whether to stay an action, the Court must the weigh competing interests that will be affected by the grant or refusal to grant a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Among these competing interests are: (1) the possible damage from the granting of a stay; (2) the hardship or inequity a party may suffer in being required to go forward; (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay; (4) "the interests of the plaintiffs in proceeding expeditiously with this litigation;" and (5) "the convenience of the court in the management of its cases and the

efficient use of judicial resources." *Id.*; *Fed Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989).

The party seeking a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). The Supreme Court explained, "If there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity." *Landis*, 299 U.S. at 255. The decision whether to grant or deny a stay is committed to the Court's discretion. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

### III. Discussion and Analysis

Plaintiff alleges that Defendant "used an automated telephone dialing system and prerecorded messages to call the Plaintiff" and putative class members (Doc. 1 at 5, ¶ 22; *see also id.* at 7, ¶ 34) The TCPA defines an "automatic telephone dialing system" as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1) (emphasis added). The Federal Communications Commission determined this definition included any system with the "'future capacity'" to store, generate, or dial random or sequential numbers through future changes in its hardware or software." *See Small v. GE Capital, Inc.,* 2016 WL 4502460, at *2 (C.D. Cal. June 9, 2016). In *ACA International v. Federal Communications Commission*, Case No. 15-1211 ("*ACA International*"), the D.C. Circuit court is currently considering the TCPA definition of "automatic telephone dialing system," and "whether the word 'capacity' meant (1) the 'current capacity' or 'present ability' of the equipment at the time the calls were made… or (2) the future 'capacity' to generate and dial random or sequential numbers through modification of the hardware and software used in the telephone systems." *See Clayton v. Synchrony Bank*, 219 F. Supp.3d 1006, 1010 (E.D. Cal. 2016).

#### A. Summary of the parties' positions

According to Defendant, the "decision in *ACA* could sharply limit Plaintiff's claim, by eliminating any prospect of liability for Charter having allegedly used an [automatic telephone dialing system] to contact Plaintiff." (Doc. 31 at 8) In addition, Defendant contends the "decision will define the scope of discovery on the ATDS issue in this case, including expert reports and depositions, by

4

clarifying the controlling legal standard." (*Id.*) Further, Defendant asserts "a brief stay would result in no genuine prejudice to the parties." (*Id.* at 9) However, Charter believes it would "suffer hardship and inequity if the action proceeds before the D.C. Circuit rules." (*Id.* at 12, emphasis omitted)

Plaintiff argues that the matter should not be stayed because she "will clearly be prejudiced by having to stand by and wait to have this matter heard." (Doc. 33 at 10) In addition, Plaintiff asserts Defendant fails "to establish any of the elements required" for the entry of a stay. (*Id.* at 7) Plaintiff contends Charter "neglects to mention any hardship or inequity that could result from this case proceeding in the ordinary course of litigation," and "offers no explanation of how the ACA Appeal would affect the specific factual and legal issues in <u>this</u> action." (*Id.* at 10, emphasis in original) Further, Plaintiff contends the stay would be "lengthy, and likely indefinite" given the potential of appeal to the Supreme Court.[1] (*Id.* at 13-14)

**B.    Analysis**

As Defendant observes, courts throughout the Ninth Circuit—including this Court—and throughout the country have granted stays of cases involving the TCPA pending the decision in *ACA International* and resolution of the definition of the word "capacity." (*See* Doc. 31 at 8, citing *e.g.*, *Clayton v. Synchrony Bank,* 219 F. Supp. 3d 1006, 1011 (E.D. Cal. 2016); *Flockhart v. Synchrony Bank,* No. 2017 WL 3276266 at *3 (N.D. Iowa Aug. 1, 2017); *Rosales v. Heath,* 2017 WL 2533365 at *3 (D. Neb. June 9, 2017); *Coulter v. Ascent Mortg. Res. Grp. LLC,* 2017 WL 2219040 at *4 (E.D. Cal. May 18, 2017)).

For example, in *Clayton*, this Court determined a stay was appropriate because briefing in *ACA International* was concluded and the court heard oral arguments on October 19, 2016. *See id.*, 219 F. Supp.3d at 1011. The Court believed "a decision is likely imminent and not indefinite." (*Id.*) Further, the Court found "the parties should not have to engage in discovery related to a claim that may not be viable." *Id.* Finally, the Court determined the plaintiff failed to demonstrate he would prejudice by a stay, noting it was "not a class action where the difficulty of reaching class members and class discovery weighs against the entry of a stay." *Id.*, n.2.

---

[1] However, at the hearing, defense counsel reiterated, the defendant is seeking a stay *only* through the completion of the appeal in the DC Circuit.

5

On the other hand, about 14 months has passed since the Court issued the *Clayton* decision and despite the Court's belief at that time that a decision was imminent, about 15 months have passed since the oral arguments. Nevertheless, no decision has been issued in *ACA International*. In light of the delay, as Plaintiff observes, district courts in the Ninth Circuit have "agreed that the continued delay in waiting for the ACA Appeal warranted the denial of a stay." (Doc. 33 at 16, citing *Brandt v. Ocwen Loan Servicing*, 2017 WL 5878581 at *4 (E.D. Cal. Nov. 29, 2017)). In *Brandt*, the Court observed that "regardless of the outcome, it would seem that an appeal to the U.S. Supreme Court is likely." *Id.* at *5 (citing *Anderson v. Credit One Bank, Nat'l Ass'n,* 2017 WL 4654646 at *3 (S.D. Cal. Oct. 17, 2017); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511 at *4 (N.D. Cal. Jan. 8, 2016) ["Even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to plaintiff"]).

Likewise, courts in the Northern District determined a stay was not appropriate in similar circumstances. *Kafatos v. Uber Technologies, Inc*., 2016 WL 97489 (ND. Cal. Jan. 8, 2016); *Lathrop v. Uber Technologies, Inc*., 2016 WL 97511 (N.D. Cal. Jan. 8, 2016)). The court observed that while the decision in *ACA International* "could be beneficial to this action by clarifying certain questions of law, the parties still require discovery on a number of factual issues regardless of the outcome of those cases." *Kafatos*, 2016 WL 97489 at *2. In addition, the court found the posture of *ACA International* was significant, explaining that "neither the parties and nor the Court can forecast when the D.C. Circuit will ultimately issue a decision." *Lathrop*, 2016 WL 97511 at *4. Further, the court indicated that "the D.C. Circuit is unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order," and the unsuccessful party "is almost certain to appeal to the Supreme Court." *Id.* Thus, the court determined the plaintiffs "would suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate." *Id.* Accordingly, the Court must determine whether a stay is warranted in this action, applying the factors set forth by the Ninth Circuit. *See CMAX*, 300 F.2d at 268; *Brandt* 2017 WL 5878581 at *3-5.

        1.     Risk of harm and prejudice to Plaintiff

Defendant argues a stay "poses no risk of damage or harm to Plaintiff" because the stay will be

| | |
|---|---|
| 1 | "brief" and "need not last long." (Doc. 31 at 11) Defendant notes: "Courts have held that there is no |
| 2 | likelihood of damage or harm under this factor sufficient to deny a request for a discretionary stay |
| 3 | merely because the stay could cause a delay to the plaintiff in receiving money damages." (*Id.*, citing, |
| 4 | *e.g.*, *Kingdom of Sweden v. Melius*, 2015 WL 7574463 at *3 (C.D. Cal. Nov. 25, 2015); *Bay Area |
| 5 | Surgical Group, Inc. v. Aetna Life Ins. Co.*, 2014 WL 2759571 at *5 (N.D. Cal. June 17, 2014); *Fontes |
| 6 | v. Time Warner Cable Inc.*, 2015 WL 9272790 at *5 (C.D. Cal. Dec. 17, 2015)). |

Despite the rulings of other judges, the Court does not agree that merely because the DC Circuit has not yet ruled, that this means a stay entered now would be indefinite. Truly, logic seems to dictate that every day that passes makes it *more* likely the ruling will be issued soon. On the other hand, the plaintiff makes very valid points that no matter how *ACA* is determined, there are factual questions that must be discovered in order to know whether the *ACA* ruling applies or, if it does, how it does. Thus, because there is "fair possibility" of harm to the plaintiff, this factor weighs against a stay. *Landis*, 299 U.S. at 255.

### 2. Hardship or inequity

When there is "even a fair possibility" of prejudice to the party opposing a stay, the moving party "must make out a clear case of hardship or inequity in being required to move forward." *Landis*, 299 U.S. at 255. Defendant asserts it will "suffer hardship and inequity if this action proceeds before the D.C. Circuit rules." (Doc. 31 at 11) According to Defendant, "If the D.C. Circuit holds that the definition of ATDS is limited to equipment with only the present capacity to generate random or sequential telephone numbers, that will eliminate one of Plaintiff's potential grounds for liability." (*Id.* at 12, emphasis omitted) Further, Defendant suggests that if the stay is not put in place, the parties will engage in discovery that is later deemed unnecessary by arguing the issue before the D.C. Circuit could "control the scope of discovery, including written discovery, expert reports, and technical deposition testimony concerning the 'capacity' of the coding, software, and hardware constituting the dialer." (*Id.*)

Significantly, as the Ninth Circuit observed, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). As a result, courts have determined the potential

7

additional motions and discovery does not support the imposition of a stay. *See, e.g.*, *Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229, 1234 (S.D. Cal. 2017) (finding no hardship, as the defendant would "still be required to produce discovery to settle the factual disputes regarding its autodialing technology"); *Brandt*, 2017 WL 5878581 at *3 ("[r]egardless of how the pending appeal in *ACA International* is decided, the parties here will be required to engage in discovery to determine the type of technology used to make the calls"); *Franklin, v. Ocwen Loan Servicing*, 2017 WL 4922380, at *4 (N.D. Cal. Oct. 31, 2017) (observing the parties would "still be required to produce discovery to settle the factual disputes regarding … autodialing technology" the plaintiff's consent, "no matter the outcome of *ACA International*").

Likewise, here, the parties in this action would be required to engage in discovery regardless of the outcome of the issue before the D.C. Circuit, such as discovery related to the technology used to call Plaintiff and the putative class members.[2] As the plaintiff points out, the mere specs on the technology used will not, necessarily, resolve the issue even once *ACA* is decided. On the other hand, at least at this time, it appears resolution of *ACA*—no matter how it is decided—will resolve the entirety of the class claims. Thus, if the Court allows discovery on the limited issue of the technology used to make the alleged calls, this factor weighs in favor of a stay.

### 3. Judicial efficiency

Defendant contends a stay would "conserve judicial and party resources." (Doc. 31 at 12) According to Defendant, "At the very least, the D.C. Circuit's ruling will define the scope of the issues and discovery needed in this case." (*Id.*, citing *Reynolds v. Time Warner Cable, Inc.*, 2017 WL 362025 at *2 (W.D.N.Y. Jan. 25, 2017) ("Surely, the *ACA International* decision, whatever its outcome and scope, will clarify many of the issues raised by this litigation and ensure the determination of those issues under the correct legal standards, thus minimizing the risk of revisiting legal determinations on reconsideration or on appeal.") The Court is somewhat persuaded by this argument.

The ability of defendant's systems to store or produce phone numbers is an important issue that must be resolved in this case, and resolution of the issue depends upon the outcome of *ACA*. It would

---

[2] As Plaintiff asserts, there is no evidence at this time as to the technology used to place the phone calls in issue. (Doc. 33 at 19).

be injudicious for this Court to attempt to make rulings that could be inconsistent with the ultimate *ACA* ruling. Therefore, the Court finds this factor weighs in favor of a stay.

**IV. Conclusion and Order**

For the reasons set forth, the Court **ORDERS**:

1. Defendant's motion to stay the proceedings (Doc. 31) is **GRANTED IN PART** as follows:

   a. The plaintiff is permitted to conduct discovery related to the type of equipment used to make the calls at issue and to inquire into how the technology was used as well as how it could be used;

   b. The plaintiff may propound written discovery and conduct a deposition of the entity on these topics. In addition, the plaintiff may serve a subpoena on the third-party vendor at issue for records and to require deposition testimony from a representative of that vendor. The written discovery requests and deposition questioning SHALL be narrowly tailored to limit the inquiry to the topics set forth in paragraph (1)(a). The depositions SHALL NOT exceed five hours. This discovery SHALL be completed by March 30, 2018;

   d. In all other respects, including the defendant's obligation to respond to written discovery already propounded, the case is **STAYED**.

IT IS SO ORDERED.

Dated: **January 19, 2018**             /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE